UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CECILIA NIETO                      )
                                   )
                                   )
v.                                 )      No.    1:08-cv-150/1:05-cr-6
                                   )             *Chief Judge Curtis L. Collier*
UNITED STATES OF AMERICA           )

## MEMORANDUM

Cecilia Nieto's ("Nieto") amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is pending before the Court and ripe for review (Criminal Court File No. 68).[1] Nieto contends she was deprived of her right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. The United States opposes the motion (Criminal Court File No. 71). Nieto has filed a reply to the government's opposition (Criminal Court File No. 75).

After reviewing the record, the Court concludes it is able to resolve Nieto's claims in her amended § 2255 motion from the record. The evidence of record clearly demonstrates Nieto is not entitled to evidentiary hearing or any relief under 28 U.S.C. § 2255. Therefore, for the following reasons, Nieto's § 2255 motion is **DENIED**, and this action is **DISMISSED** (Criminal Court File No. 68).

---

[1]    Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

Nieto's initial § 2255 motion was timely filed (Criminal Court File No. 65). Subsequently, after the expiration of the one year statute of limitation for filing a § 2255 motion, Nieto filed the identical motion two more times, labeling each one an amended motion (Criminal Court File Nos. 67 & 68). Under the circumstances, the first amended motion and supporting brief (Court File No. 67) replaces the previously filed § 2255 motion (Criminal Court File No. 65), and the second amended motion is duplicitous (Criminal Court File No. 68). Accordingly, the Court will only cite to the first amended § 2255 motion and supporting brief (Criminal Court File No. 67).

## I.        Standard of Review

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside that sentence, on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.

This Court has jurisdiction to adjudicate this matter under 28 U.S.C. § 1331. The movant has the burden of establishing any claim asserted in the motion by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

In order to obtain relief under § 2255 when a constitutional error is alleged, the record must reflect a constitutional error of such magnitude that it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir.), *cert. denied*, 531 U.S. 884 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental

2

as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001), *cert. denied*, 535 U.S. 967.

## II. Procedural History

On January 25, 2005, a federal grand jury for the Eastern District of Tennessee at Chattanooga, returned a five-count indictment charging Nieto and Miguel Y. Garcia with one count of conspiring to distribute five hundred grams or more of a mixture and substance containing cocaine hydrochloride, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846; two counts (one on December 29, 2004, and one on January 6, 2005) of aiding and abetting each other in the distribution of cocaine hydrochloride in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) and Title 18, United States Code, Section 2; one count of aiding and abetting each other in the possession with the intent to distribute cocaine hydrochloride in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(c) and Title 18, United States Code Section 2; and one count of aiding and abetting each other in possession of a firearm in furtherance of the drug trafficking crimes in counts one, three, and four in violation of Title 18, United States Code, Section 924(c) (Criminal Court File No. 2).

Prior to trial, counsel requested additional money for investigative expenses so an investigator/interpreter could locate and interview a number of Spanish speaking witnesses (Criminal Court File No. 24). In addition, prior to sentencing counsel requested additional funds for the investigator/ interpreter (Criminal Court File Nos. 42 & 42), which was granted (Criminal Court File No.52).

On May 10, 2005, a jury convicted Nieto on all five Courts of the Indictment. Nieto was sentenced to the custody of the Bureau of Prisons on Counts One through Four to 78 months on each

count to run concurrent, and she was sentenced to 60 months on Count Five to run consecutive to Counts One through Four, for a total prison term of 138 months. In addition, she received a total term of four (4) years on supervised release and a $500.00 assessment (Criminal Court File Nos. 49 & 51).

Nieto filed her notice of appeal on August 23, 2005 (Criminal Court File No. 50). The United States Court of Appeals for the Sixth Circuit affirmed her convictions and sentences on March 28, 2007. *United States v. Neito*, 226 Fed.Appx. 483, (6th Cir. 2007), *available at* 2007 WL 930405 (Criminal Court File No. 60). Although it does not appear Nieto filed a petition for a writ of certiorari, her judgment became final when the time expired for filing a petition for certiorari. *Clay v. United States*, 537 U.S. 522, 532 (2003). A petition for a writ of certiorari to review a judgment is timely when it is filed within 90 days after entry of the judgment. *See* Rule 13 Supreme Court Rules. Thus, it appears the judgment became final on June 26, 2007. It appears Nieto timely filed this § 2255 motion on June 20, 2008, as she states she deposited the motion in the prison mail collection box on that date (Criminal Court File No. 65, p. 23 of 23), and because the amended motion is a duplicate, it is deemed timely filed (Criminal Court File No. 67).

## III. Facts

The United States Court of Appeals for the Sixth Circuit described the following offense conduct:

> The government attempted to prove at trial that Defendant and Miguel Garcia entered into a conspiracy to distribute cocaine hydrochloride in December of 2004, which lasted until January of 2005. The government produced evidence of two specific drug deals where Garcia and Defendant cooperated to sell or attempt to sell cocaine. Additionally, Garcia and his girlfriend, Rebecca Sparks, testified that an ongoing drug distribution relationship existed between Garcia and Defendant.
>
> The two specific drug deals occurred on December 29, 2004 and January 6, 2005. On

4

December 29, 2004, Garcia called Defendant, and after that conversation, Garcia and Sparks went to Defendant's house. Defendant was going to sell two ounces of cocaine, in cooperation with Garcia, who would meet the buyer and conduct the transaction. Defendant, Garcia, and Sparks drove to the parking lot of a local restaurant in order to meet the buyer. Defendant handed Garcia the cocaine and a gun. Sparks attempted to talk Garcia out of carrying the firearm, but Garcia insisted upon carrying the weapon. Defendant drove from the restaurant to a nearby hotel, where Garcia left Defendant's car and walked to a carwash located in the immediate vicinity of the hotel. At the carwash, Garcia briefly visited the car of another individual, to whom he sold two ounces of cocaine. After the drug deal, Garcia gave Defendant the money he had received from the drug deal, and he returned the gun to her. Defendant paid Garcia $300 for conducting the transaction. Unbeknownst to Garcia, Sparks, or Defendant, the buyer worked with the government as a confidential informant, and he turned the drugs over to the police. The substance that the confidential informant had purchased was confirmed to be a mixture containing cocaine, which weighed 48.2 grams.

On January 6, 2005, Garcia went to a bar where Defendant was working, and Defendant gave him five ounces of cocaine. Garcia and Defendant then went to Defendant's house, where they picked up a gun. Garcia and Defendant returned to the same carwash, although this time they caravanned in separate cars. At the carwash, Garcia met the buyer, who was a confidential informant working with the government. Before Garcia learned that the buyer was a confidential informant, he and the buyer talked about a drug deal involving a greater quantity of drugs, and Garcia told the buyer that he and Defendant in the future would sell him a kilogram of cocaine. Garcia was planning to meet Defendant at the carwash and give her the money received from the sale of the five ounces of cocaine and return the gun to her, but he was arrested before this rendevous could occur. Defendant was arrested at approximately the same time three hundred years [sic] away from the carwash. She had intended to give Garcia $400 for transacting this drug deal.

In addition to these two specific drug transactions, the testimony from Garcia and Sparks at trial suggested that Defendant was engaged in the business of selling cocaine. Sparks testified that she had seen Defendant with drugs on numerous occasions, and that everyone knew that Defendant dealt drugs. Garcia testified that prior to the drug deal on December 29, 2004, he had engaged in other drug deals with Defendant. He stated that he would get drugs from Defendant every two to three weeks, in a half-ounce quantity, and that he would only pay for the drugs after he had sold them.

On May 10, 2005, the jury returned a verdict of guilty as to all counts. The jury found, by way of a special verdict form, that the government had proven beyond a

reasonable doubt that Defendant was responsible for more than 500 grams of cocaine as alleged in Count One of the indictment.

*United States v Nieto*, 226 Fed.Appx. 484-86.

## IV.    Analysis of Claims

In her § 2255 motion, Nieto raises eleven instances of alleged ineffective assistance of counsel and three claims challenging her sentence. After reviewing the law applicable to ineffective of assistance of counsel claims, the Court will then address the eleven ineffective assistance of counsel claims before proceeding to the sentencing challenges.

### A.    <u>Ineffective Assistance of Counsel Claims -Applicable Law</u>

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

6

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the movant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To prove prejudice, the movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, explaining:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id*. at 697.

7

### 1.      Counsel's Plea Advice

At the outset, the Court notes that Nieto's brief in support of her amended § 2255 motion is difficult to decipher as it is confusing, frequently repetitive, and disorganized.  Nevertheless, the Court discerns that Nieto first alleges counsel was ineffective because he failed to advised her of all the facts and law relevant to her decision to plead not guilty and proceed to trial.  According to Nieto, had she been fully advised, there is a reasonable probability she would have pleaded guilty or *nolo contendere*, or proceeded to a bench trial on stipulated facts.  Thus, she argues, her not guilty plea was not a voluntary and intelligent choice among the alternative courses of action available to her. In support of this claim, Nieto claims counsel never advised her she would receive an offense level reduction for acceptance of responsibility if she pleaded guilty or would likely receive such a reduction if she had pleaded *nolo contendere*.  Rather, Nieto complains, counsel advised her to go to trial and misadvised her that the only way to receive a reduction in a sentence is if the government offerd a plea agreement (Criminal Court File No. 67 at 4-5, 18-19, 65-68).   Nieto also claims she challenged her factual guilt for two reasons: (1) because counsel misadvised her she had no options but to plead guilty or proceed to jury trial and (2) because she wanted to preserve review of the sufficiency of the evidence claim (Criminal Court File No. 67 at 67).  The Court will address each claim in turn after a brief discussion of the law applicable to allegations claiming counsel's plea advice resulted in ineffective assistance.

In analyzing this argument, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.   "A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient

8

performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty." *Humphress v. United States,* 398 F.3d 855, 859 (6th Cir. 2005) (citing *Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir.2001) (citing *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir.1988)). *Strickland* explains "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Initially, the Court observes that Nieto has failed to demonstrate prejudice as to any of her plea-advice claims of ineffective assistance of counsel as she has failed to demonstrate a reasonable probability that, but for counsel's deficient performance, she would have pleaded guilty. For example, in relation to her ineffective assistance of counsel claims relating to her attorney's advice, Nieto states, "[b]ut for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different[]" (Criminal Court File No. 67, p.4), and "absent said [deficient] performance, there is a reasonable probability that Ms. Nieto would have moved for a bench trial on stipulated facts and would have proceeded to a bench trial on stipulated facts instead of a jury trial on contested facts." (Criminal Court File No. 67, p. 67). Consequently, because she has failed to do anything more than speculate that there is a reasonable probability she would have proceeded differently, Nieto has failed to demonstrate prejudice. *Cf. Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir., 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim that he would have pleaded differently and gone to trial is insufficient); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) (bare

9

allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*). Nevertheless, the Court will address each alleged instance of ineffective assistance of counsel in relation to plea advice alleged by Nieto.

### a. Incorrect Advice

As previously stated, Nieto's claims are confusing pled, contradictory, and repetitive as she seemingly makes the same claims multiple times though worded differently(Criminal Court File No. 67, pp. 18-19; 23-28; 51-54). First, Nieto claims counsel advised her to proceed to trial and never advised her about a sentence reduction for acceptance of responsibility, but then she claims he misadvised her that the only way to obtain a benefit to her sentence (a benefit which she has failed to explain) is if the government offered a plea agreement. Nieto also claims the only reason she proceeded to trial and challenged her factual guilt was because she wanted the courts to review the sufficiency of the evidence, and she was misadvised that she had no option but to plead guilty or proceed to trial.

Nieto's claims are belied by the record. The record clearly reflects counsel and Nieto discussed her pleading guilty and that her sentence would be less if she pleaded guilty (Criminal Court File No. 27). Indeed, Nieto wrote a letter to the Court requesting to fire her attorney contending "[h]e is trying to use a scare tactic to get me to plead guilty. I can not plead to any charge's [sic] that I have not committed. He said that I would get 10 yrs if I plead guilty and 30 yrs if I said not guilty. He said if I didn't plead guilty that 3 more charges would be added to my case?" (Criminal Court File No. 27).[2] It is apparent from Nieto's letter, that counsel discussed entering a

---

[2] The record reflects the government had "contemplated charging Ms. Nieto with two different counts of 924(c), which would have made her face at least 35 years' worth of mandatory minimum in this case. And Mr. McDougal [Nieto's defense attorney], to his credit talked [the

guilty plea with Nieto, and she was informed there would be a sentence reduction for pleading guilty.

In addition, trial counsel and Hugo Ruiz, an employee of the Office of Public Defender who is bilingual (English-Spanish) was used by defense counsel as an investigator/interpreter in this case, met with Nieto and, both counsel and the investigator/interpreter, have submitted affidavits averring counsel explained the nature of the charges, the evidence the government had against her, the different courses of action available to her, the possible repercussions if she proceeded to trial and was convicted, the level of her offenses, and the possible benefits she could derive if she chose to enter a plea of guilty (Criminal Court File No. 72-1, 71-3). In addition, both counsel and the investigator/interpreter also aver Nieto insisted she was innocent of the charges and insisted on going to trial (Criminal Court File Nos. 71-2, 71-3). These averments are supported by Nieto's letter requesting to fire counsel (Criminal Court File No. 27), her testimony during trial, and her professions of innocence during sentencing where she claimed she "did nothing wrong. The only thing I am guilty of is of being in this country illegally. That is the only thing that I could plead guilty to. That's all." (Criminal Court File No. 56, p. 8).

Clearly, the record reflects that at the time of the criminal proceedings, Nieto was professing her innocence and denying all involvement in the crimes. Nieto filed a reply to the government's response which glaringly fails to address the averments in the affidavits by counsel and the investigator/interpreter or provide any details of the conversations and the specific advice she received from counsel prior to proceeding to trial. As previously stated, when counsel discussed her

government] out of it[,]" even though the government believed the proof was there to establish it (Criminal Court File No. 56, p. 9).

entering a guilty plea, Nieto filed a motion requesting to fire him, complaining counsel was attempting to scare her into pleading guilty and professing her innocence (Criminal Court File No. 27). The magistrate judge conducted a hearing and treated the motion as a motion to replace counsel (Criminal Court File No. 29). During the hearing, Nieto claimed she did not understand what was going on in her case and requested a Spanish speaking attorney. Concluding Nieto had not shown a valid reasons to replace counsel, the magistrate judge denied the motion (Criminal Court File No. 30).

Nieto has failed to demonstrate she was not properly advised relative to proceeding to trial or pleading guilty as she has failed to provide any details of counsel's advice that she alleges was unreasonable. Therefore, Nieto has failed to demonstrate counsel performed deficiently. In addition, even if counsel did perform deficiently in this regard, Nieto has failed to demonstrate she suffered any prejudice as she has not demonstrated that, but for counsel's alleged inadequate advice, she would have pleaded guilty. Accordingly, because the record before the Court does not support Nieto's contention that counsel failed to provided proper advice or her speculation that there is a reasonable probability she would have pleaded guilty but for counsel's alleged misadvice, relief is **DENIED** on this claim.

### b. *Nolo Contendere or Conditional Plea*

As previously noted, Nieto has not made factually supported, clear and concise claims. Although she clearly argues counsel should have advised her of the availability of resolving her case by requesting a bench trial on stipulated facts, thus preserving her sufficiency of the evidence claim and eligibility for a reduction in sentence for acceptance of responsibility, her pleading contains unclear allegations regarding entering a *nolo contendere* plea and a conditional plea.

12

If she is arguing that upon proper advice from counsel she would have entered a *nolo contendere* plea, *see* Fed. R. Crim. P. 11(a)(3), she is unable to demonstrate a reasonable probability that, but for counsel's alleged lack of advice the result of the proceeding would have been different, because the Court would not have been inclined to grant her a three-point reduction for acceptance of responsibility since she would not have been admitting she committed any criminal conduct. In addition, contrary to Nieto's claim, her insufficient evidence claims would have been waived by virtue of a plea of *nolo contendere* because there was no adverse determination of a pretrial motion on the sufficiency-of-the-evidence issue. "[A] plea of nolo contendere constitutes a waiver of all so-called non-jurisdictional defects or, more accurately, any claims not logically inconsistent with the issue of factual guilt, as well as the right to contest the factual merits of the charges against him[,]" *United States v. Gaumer*, 27 F.3d 568 (6th Cir. 1994), *available in* 1994 WL 269581, * 2 (internal punctuation marks and citations omitted). Therefore, although Rule 11(a)(2) of the Federal Rules of Criminal Procedure provides that with consent of the court and the government, a defendant may enter a plea of *nolo contendere*, reserving the right to have an appellate court review an adverse determination of a specified pretrial motion, Nieto's sufficiency-of-the-evidence claim was not raised in a pretrial motion nor does it appear it could have been raised pretrial.

Consequently, it does not appear Nieto would have found herself in a more favorable position with the reduction for acceptance of responsibility or preservation of the sufficiency-of-the-evidence issue had counsel advised her to plea *nolo contendere*. In addition, as previously noted, the record reflects Nieto's clear and consistent desire to proceed to trial on the charges and profess her innocence. Nevertheless, even if counsel's performance was deficient, Nieto's self-serving bare allegation that there is a reasonable probability she would have entered a *nolo contendere* plea is

13

insufficient to demonstrate that but for counsel's alleged error, she would have pleaded *nolo contendere*. Accordingly, no § 2255 relief is warranted on her claim that counsel failed to advise her regarding a *nolo contendere* plea.

If Nieto is arguing she would have entered a conditional plea, she would have needed the consent of both the Government and the Court and again, she would not have been able to preserve her sufficiency-of-the-evidence claim as it was not the subject of an adverse determination of a pretrial motion. *See* Fed. R. Crim. P. 11(a)(2). Consequently, it does not appear Nieto could have entered into a conditional plea. Assuming, however, that a conditional plea was possible, Nieto does not contend the government would have given its consent to a conditional plea, and there is no evidence in the record it would have done so. This argument fails to make sense in the context of the record before the Court because Nieto is now suggesting she would have pleaded guilty to all counts in the indictment after filing a motion to fire counsel where she professed her innocence, after testifying under oath under penalty of perjury at trial that she was innocent, and continuing, during sentencing, to profess her innocence and claim the only thing she did wrong was enter this country illegally. Nevertheless, Nieto has failed to demonstrate there is a reasonable probability that had she been advised of a conditional plea, she would have entered a conditional guilty plea. Accordingly, she has not demonstrated counsel was ineffective in this regard and no § 2255 relief is warranted.

In sum, Nieto's ineffective assistance of counsel arguments, as they relate to the plea phase of her proceedings, provide no basis on which to grant Nieto's § 2255 motion.

c.    *Bench Trial*

Nieto also claims counsel rendered ineffective assistance when he failed to discuss the possibility of her proceeding with a bench trial on stipulated facts. In addition to suffering from the

same infirmities described above, a bench trial on stipulated facts would have required the government's consent, which it indicates would not have been forthcoming (Criminal Court File No. 71 ("Even if petitioner chose to waive her right to a jury, the United States would not stipulate to the facts and the evidence at trial would have been presented to the Court").

Moreover, Nieto has failed to identify any facts to which she would have stipulated, thus making this argument speculative. The government argues the record demonstrates she would not have stipulated to the material facts that she told her codefendant she would supply the kilogram of cocaine for distribution and she gave him her handgun to use in both drug transactions. In addition, the government claims it would not have stipulated to the facts, and counsel avers there were no stipulated facts because Nieto stated she was innocent of the charges.

There is nothing in the record indicating the United States would have consented to a bench trial. Fed. R. Civ. P. 23(a)(1)-(3) (provides that if a defendant is entitled to a jury trial, the trial must be by jury unless the defendant waives a jury trial in writing; the government consents; and the court approves). Nieto's argument regarding the benefit of a bench trial on stipulated facts amounts to nothing more than mere speculation, is without merit, and fails to demonstrate she suffered any prejudice as a result of counsel's alleged failure to advise her regarding a bench trial on stipulated facts. Although it appears a bench trial would have permitted her to appeal the sufficiency of the evidence issue, it does appear Nieto would have qualified for the acceptance of responsibility reduction had she proceeded with a bench trial. Nevertheless, her self-serving, factually unsupported claim, which lacks any indication of the facts to which she would have stipulated, is insufficient to demonstrate a reasonable probability that had counsel advised her regarding the possibility of proceeding with a bench trial on stipulated facts she would have forgone her decision

15

to proceed by a jury trial. Accordingly, Nieto has not established counsel rendered ineffective assistance when he failed to inform her of the possibility of proceeding by bench trial on stipulated facts and no § 2255 relief is warranted.

In conclusion, even assuming counsel's performance was objectively unreasonable during the pre-plea/pre-trial phases for failing to advise Nieto about all of the possible ways to proceed, Nieto has not demonstrated the necessary prejudice to warrant reversal of her convictions. Nieto has not demonstrated, much less even alleged, that she would have pleaded guilty, *nolo contendere*, or proceeded to a bench trial with stipulated facts absent counsel's advice. Rather, she simply speculates there is a reasonable possibility she would have pleaded guilty, *nolo contendere*, or proceeded to a bench trial on stipulated facts. No support is provided for her speculation. Consequently, the overwhelming record of her continued profession of innocence along with the lack of any specific facts to support her claims, fail to demonstrate, but for counsel's failure to advise her of these other options, she would have chosen to proceed differently. In fact, given the evidence against her, there is little reason to believe she would have fared any better by proceeding to a bench trial with stipulated facts or pleading *nolo contendere*. And since Nieto is mistaken as to her ability to preserve issues for review to which she did not receive an adverse ruling pretrial, the record reflects she would not have entered a *nolo contendere* or guilty plea, as she maintains one of the reasons she went to trial was to preserve her sufficieny-of-the-evidence issue. Nieto's suppositions

of what might have happened had counsel rendered certain advice are insufficient to sustain her burden of demonstrating deficient performance or prejudice.

As previously noted, Nieto has not provided any specifics as to the conversations she had

16

with counsel. Rather, she merely presents subjective, self-serving statements which are not supported by objective evidence in the record. Nieto does not allege that in response to a plea offer counsel advised her to reject the offer and advised her to do to trial. Nor does Nieto claim she would have pleaded guilty absent his alleged deficient advice. Indeed, neither Nieto's reaction to counsel's discussion with her about pleading guilty or her testimony during trial and sentencing, lend support to her factually unsupported claim that there is a reasonable probability she could have proceeded differently. Accordingly, Nieto's claims that counsel's plea advice amounted to ineffective assistance of counsel, are without merit and § 2255 relief is **DENIED**.

### 2. *Failure to File Motions*

Nieto complains counsel failed to file a motion to suppress the evidence and a motion to dismiss the indictment. Nieto, however, fails to explain upon what legal basis counsel should have filed either motion and the record does not reveal a basis for filing either motion.

Because Nieto has failed to identify the grounds upon which the motion to suppress the evidence should have been made or the grounds which require the dismissal of the indictment, her claim that counsel was ineffective for failing to file these two motions is insufficiently pled as she has failed to provide any factual support as required by Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts. There is no proof before the Court identifying grounds upon which counsel should have filed these motions nor is there any evidence indicating any legitimate grounds for doing so. Accordingly, Nieto is not entitled to § 2255 relief on her factually unsupported claim that trial counsel failed to file a motion to suppress the evidence and a motion to dismiss the indictment.

Additionally, for the following reasons, the Court also makes an alternative finding that

Nieto has failed to demonstrate counsel was ineffective for failing to file these motions. "[T]he failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Even if a motion is potentially meritorious, the decision of whether to file such a motion is a tactical one. In addition, an attorney does not perform deficiently or prejudice his client by failing to file a frivolous motion. *See Harris v. United States,* 204 F.3d 681, 683 (6th Cir. 2000).

The record reflects a motion to suppress the evidence would have been frivolous as the cocaine from the December 2004 sale was delivered to the government by the confidential informant. The cocaine and firearm from the January 2005 transaction were seized during a search of the vehicle of Nieto's codefendant, a vehicle to which she had no expectation of privacy. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citations omitted). The Sixth Circuit has explained, "when a defendant is aggrieved by an allegedly illegal search of a thrid party's person or property, the Fourth Amendment rights of *that* defendant have not been infringed." *United States v. Myers*, 102 F.3d 117, 231 (6th Cir. 1996) (emphasis in original). Consequently, it does not appear Nieto's counsel had any basis for suppressing any evidence as it does not appear Neito had standing to have the evidence suppressed.

Similarly, a motion to dismiss the indictment would have been frivolous as the Court is unable to discern a viable ground for making such a motion and Nieto has failed to identify any ground to support such a motion. Indeed, she has identified no defect in the charging document and the Court finds none. Consequently, even if counsel was deficient for failing to file these motions, Nieto suffered no prejudice as there does not appear to be grounds to grant either motion had it been

filed.

Accordingly, Nieto will be **DENIED** relief on her claim that counsel was ineffective because he failed to file a motion to suppress and a motion to dismiss the indictment because, in addition to the claim being insufficiently pled as she has failed to provide any factual support as required by Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts, she has failed to demonstrate counsel was constitutionally ineffective in not filing either or both of these motions.

### 3. *Counsel's Performance During Trial*

Nieto claims counsel failed to investigate and present available, material, and exculpatory evidence and testimony at trial and failed to object to the unlawful admission of evidence (Criminal Court File No. 67, pp. 6, 19). Nieto has failed to identify the material and exculpatory testimony and evidence which she alleges counsel failed to investigate and present. "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

Therefore, because Nieto has failed to identify the material and exculpatory evidence and testimony she alleges counsel failed to investigate and present, her claim that counsel was ineffective for failing to investigate and present such evidence is insufficiently pled as it violates Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts. There is no proof before the Court identifying the evidence she alleges should have been presented during her trial. Accordingly, Nieto is not entitled to § 2255 relief on her claim that trial counsel failed to investigate and present available, material, and exculpatory evidence and testimony.

As to counsel alleged failure to object to the unlawful admission of evidence, Nieto

19

specifically challenges evidence provided by her codefendant regarding a conversation he had with a confidential informant and Detective Beverly's testimony regarding the conversation he heard between Nieto's codefendant and the confidential informant (Criminal Court File No. 67, pp. 19-20, 61-62).

While testifying during Nieto's trial, Nieto's codefendant was asked about the conversation he had with the confidential informant before he was arrested. Counsel objected on hearsay grounds arguing he could not testify as to what another person stated (Criminal Court File No. 55, p. 79). The prosecutor argued he could for purposes of context and the Court overruled the objection. Nevertheless, rather than testifying as to what the confidential informant said, Nieto's codefendant testified he had a conversation with the confidential informant that he(the codefendant) and Nieto "were later going to give him [the confidential informant] a kilo[]" of cocaine (*Id.*). Thus, it appears the objection was properly overruled. The codefendant then testified he and Nieto discussed giving the confidential informant a kilogram of cocaine. Pursuant to Federal Rule of Evidence 801(d)(2), this testimony was not hearsay and the Court properly overruled trial counsel's objection. Consequently, Nieto is incorrect in her contention as trial counsel did object to the testimony and therefore, counsel did not render ineffective assistance in that instant.

Next, Nieto claims counsel failed to object to Detective Beverly's testimony as to the conversation he overheard between Nieto's codefendant and the confidential informant. Again, Neito's allegation is incorrect as counsel did indeed object to Detective Beverly's testimony. The prosecutor asked Detective Beverly to tell the jury what happened on January 6, 2005 (Criminal Court File No. 55, p. 111). As part of his explanation, the detective stated they had the confidential informant attempt to purchase a kilo of cocain but the person he was dealing with said he was unable

20

to obtain a kilo at that time. At that point, defense counsel objected and argued the detective's testimony of what the detective heard, most of which was in Spanish and not understood by the detective, was hearsay and double hearsay. Defense counsel argued the testimony did not fit into any of the hearsay exceptions and since it was from a confidential informant that the defense knows nothing about, it was not trustworthy and the confidential informant would need to be brought in to testify. The prosecution demonstrated the detective heard the conversation as it occurred but defense counsel argued it was in Spanish and because his testimony was not his (the detective's) translation, he could not testify. Defense counsel conducted a voir dire examination and the detective testified the only thing he understood without interpretation was the Spanish word for kilo. Consequently, the detective was not permitted to testify as to the remainder of the conversation between the confidential informant and Nieto's codefendant (Criminal Court File No. 55, pp. 113-115).

The record clearly demonstrates defense counsel properly objected to the admission of the testimony of Nieto's codefendant and the detective testimony. Accordingly, Nieto is **DENIED** relief on her claim that counsel filed to object to the unlawful admission of evidence.

### 4. Petitioner's Decision to Testify

Nieto complains that counsel "place[d]" her on the stand to testify without fully advising her of the potential adverse consequences if her testimony was not believed. She further argues counsel had her testify without any witness preparation, without a trial strategy, without any purpose, and "with some concern that she would perjure herself." (Criminal Court File No. 67, p. 7).

"[T]he ultimate decision whether to testify rests with the defendant[.]" *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). "This court entertains a strong presumption that trial

counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009).

Intially the Court observes Nieto alleges counsel had her testify "without fully advising her as to the potential adverse consequences to her sentence if her testimony wasn't believed . . . [,]" but she fails to explain the details of the conversation between her and counsel regarding her decision to testify and what advice he did render. Specifically, Nieto does not provide any details of any conversation she had with trial counsel, what advice counsel gave, or contend she would not have testified had counsel adequately prepared and advised her of the possible consequences of her testifying.

Counsel, however, avers "Ms. Neito took exception to [his] evaluation of her chances [at trial] and asked to have new counsel appointed." (Criminal Court File No. 71-2). In addition, counsel avers he explained all the dangers of proceeding to trial with Nieto and she voluntarily chose to testify she was not involved in drug trafficking after counsel advised her that "her testimony must be truthful, that her testimony would be subject to perjury charges if it was determined to be materially and intentionally false, and that if [she] testified falsely her sentencing guidelines could be increased based upon a finding she obstructed justice. After providing this advice, Ms. Nieto personally chose to testify." (Criminal Court File No. 71-2). Notably, the investigator/interpreter avers "Ms. Nieto insisted that she was innocent of these charges and that she wished to go to trial." (Criminal Court File No. 71-3). Although Nieto filed a reply to the government's response she did not address or dispute either affidavit (Criminal Court File No. 75).

As the record clearly demonstrates, Nieto chose to testify to present her theory of the case–that she was innocent of the charges. It is apparent from Nieto's letter that she filed with the

Court requesting new counsel, that she was maintaining her innocence and the only way to present her theory was through her testimony. She claims there was no discussion of trial strategy or purpose in relation to her testimony. The record reveals, from the time of her arrest to her sentencing, Nieto maintained she was innocent. Therefore, this claim is nonsensical as clearly the trial strategy and purpose of Nieto's testimony was to present her version of the facts which was the only evidence of her alleged innocence. Although her claim is confusingly pled because she states she was placed on the stand "with some concern that she would perjure herself[,]" Nieto took an oath to tell the truth when she was sworn to testify, thus she was aware of her duty to tell the truth and not perjure herself. Nevertheless, even if counsel's assistance was deficient, Nieto has not demonstrated she was prejudiced. Nieto does not aver she would not have testified but for counsel's alleged shortcomings or she would have testified truthfully as to her involvement with the drugs deals and firearm. Instead, she simply states, "[b]ut for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different." (Criminal Court File No. 67, p. 7). This statement fails to meet the high hurdle of demonstrating prejudice.

In light of Nieto's position of innocence during her criminal proceedings, counsel's sworn affidavit, and the complete record before the Court, Nieto has not demonstrated counsel performed deficiently or she suffered any prejudice, as she has failed to allege or demonstrate she would have chosen not to testify or to testify differently had she received different advice from counsel. Accordingly, Nieto's claim that counsel failed to properly advised her regarding testifying at trial does not satisfy *Strickland's* ineffective assistance standard and § 2255 relief is **DENIED**.

### 5.    *Alleged Improper Jury Instruction and Prosecutor Arguments*

Nieto claims defense counsel failed to timely request appropriate jury instructions and object

to insufficient instructions. Nieto also claims counsel failed to object to improper arguments made by the prosecutor during closing arguments. Once again Nieto has failed to provide any factual support as she has failed to identify what jury instruction counsel should have requested and what instructions were insufficient. In addition, she does not identify the alleged improper arguments by the prosecutor during closing arguments.

Consequently, Nieto's failure to identify the jury instructions counsel should have requested and to which he should have lodged an objection, and her failure to identify the prosecutor's arguments she alleges were improper, render this ineffective assistance of counsel claim insufficiently pled in violation of Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts, which requires factual support for each claim. There is no proof before the Court indicating any legitimate ground upon which counsel should have lodged objections to the jury instruction or the prosecutor's arguments, or upon which counsel should have requested jury instructions. Accordingly, § 2255 relief is **DENIED** on Nieto's factually unsupported claims that counsel was ineffective in relation to the jury instructions or the prosecutor's arguments.

### 6. *Sentencing Error*

In this claim, Nieto contends counsel failed to investigate and present available legal evidence and sentencing authority during her sentencing hearing. Nieto also complains counsel failed to object to some unidentified unlawful, false, and unreliable evidence used to determine her sentencing guideline sentence range and ultimate sentence. In support of this claim, Nieto contends counsel stated that all substantive objections were determined by the jury (Criminal Court File No. 67, p. 21).

The record reflects counsel filed objections to the Presentence Investigation Report ("PSI")

but the prosecutor argued and counsel conceded that the jury resolved the objections at trial. For example, counsel objected to the amount of drugs involved and to the finding that Nieto gave the firearm to her codefendant, both of which the jury had found beyond a reasonable doubt (Criminal Court File No. 56, pp. 3-4). Consequently, the Court denied Nieto's objections to the PSI.

Once again, Nieto has violated Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts because she has failed to provide any factual support for her claims. Specifically, Nieto does not identify what evidence and sentencing authority counsel failed to present at her sentencing hearing. Likewise, she has failed to identify the unlawful, false and unreliable evidence she alleges was used to determine her guidelines and sentence. Consequently, her claim that counsel rendered ineffective assistance during sentencing is insufficiently pled because she has failed to provide any factual support as required by Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts. There is no proof before the Court identifying the facts upon which Nieto's broad claims rest and, alternatively, there is no evidence demonstrating counsel was ineffective during sentencing or that Nieto suffered any prejudice as a result of his performance during sentencing. Accordingly, Nieto is not entitled to § 2255 relief on her claims that counsel was ineffective in relation to her sentencing.

### 7. Counsel's Failure to Request a Downward Departure

Nieto claims counsel was ineffective when he failed to request a downward departure under 18 U.S.C. § 3553(a). In addition to this claim being factually inaccurate as counsel did request a downward departure below the sentencing guidelines, Nieto has failed to identify the grounds upon which she believes a departure was warranted and which counsel failed to argue.

Counsel asked the Court to consider certain mitigating factors–that Nieto will be deported

after she finishes her sentence since she is here illegally, she has a small child who is in Mexico that she will not be able to see while she is incarcerated, and that a ten year sentence was significantly longer than her codefendant's sentence despite the fact that her codefendant was the one who was selling the cocaine and possessed the firearm–and impose a sentence of 60 months or as low as possible (Criminal Court File No. 56, p. 7). Nieto's effective guideline range was 138-157 months. Thus, counsel requested a sentence below her 138 month Guideline range. A five year sentence was the statutory mandatory minimum on the drug convictions and that sentence has to run consecutive to the mandatory minimum five years on the § 924(c) conviction, for a total of ten years (120 months) (Criminal Court File No. 56, p. 7). Thus, it is clear counsel argued for a downward departure and Nieto has failed to identify any additional allegations in her § 2255 motion that counsel should have argued that would have warranted a downward departure. Consequently, Nieto is simply incorrect in her contention that counsel failed to request a downward departure and she has failed to demonstrate counsel performed deficiently during the sentencing hearing.

In addition, Nieto has failed to demonstrate she suffered any prejudice as a result of counsel's performance. The Court, deeming the guideline range as well as the guidelines themselves advisory, considered counsel's arguments and the sentencing goals stated in 18 U.S.C. § 3553(a) before determining Nieto's sentence (Criminal Court File No. 56). Accordingly, Nieto's claim that counsel failed to move for a departure is inaccurate and offers her no relief.

### 8. Counsel's Failure to Challenge Nieto's Sentencing Guidelines as Violative of the Sixth Amendment

Nieto claims counsel failed to challenge, during sentencing and on direct appeal, her sentence as violating the Sixth Amendment. The record clearly reflects there was no legitimate basis upon which counsel could have raised an objection at sentencing or on direct appeal. Moreover, Nieto

26

has once again failed to provide the required factual support in violation of Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts as she has failed to specify on what grounds she believes counsel should have argued her sentence violated the Sixth Amendment. Consequently, this claim is insufficiently pled. Nevertheless, the Court will also make the following alternative finding.

As previously stated, the Court deemed the guidelines as merely advisory and not binding pursuant to *United States v. Booker*, 543 U.S. 220 (2005) (Criminal Court File No. 56, p. 6). Thus, there was no Sixth Amendment violation. The drug amount and firearm upon which the Court relied to determine the base offense level was found by the jury beyond a reasonable doubt, thus the Sixth Amendment is satisfied.

In addition, presuming Nieto is claiming counsel was ineffective for failing to challenge the two level enhancement for obstruction of justice, no relief is warranted as she did not suffer any prejudice. The Court properly imposed a two level obstruction-of-justice enhancement pursuant to United States Sentencing Guidelines ("USSG") § 3C1.1. Having rejected the objections the Court concluded the PSI accurately stated the facts and calculated the guidelines (Criminal Court File No. 56, p. 5). Paragraph fourteen of the PSI identified the evidence warranting the adjustment for obstruction of justice. Thus, the Court implicitly determined Nieto's testimony under oath that she did not distribute cocaine, was just by coincidence present on both occasions when cocaine was delivered by codefendant Miguel Yanez , and was in no way involved in these illegal activities was false.

Section 3C1.1 provides for a two-level enhancement where a defendant willfully obstructs or impedes or attempts to obstruct or impeded the administration of justice. The notes to this section

recite "committing, suborning, or attempting to suborn perjury" as examples of obstructing justice. USSG § 3C1.1 cmt. N. 4(b). A defendant who testifies under oath commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 97, 94 (1993). The record clearly supports this enhancement.

Finally, the Court began the sentencing proceeding by correctly calculating the applicable guideline range, which it determined was merely advisory and not binding, before listening to the argument of the parties and considering the sentencing goals stated in Title 28 U.S.C. § 3553(a), and arrived at a sentence "sufficient but not greater than necessary to comply with the purposes set forth in Section 3553(a)(2)" (Criminal Court File No.56. pp. 6-12). The record demonstrates no error in the Court's sentencing analysis and the weight accorded the sentencing guidelines. Consequently, counsel was not deficient for failing to object at sentencing or raise on appeal a claim that Nieto's sentence violated the Sixth Amendment. Accordingly, relief is **DENIED** on her claim that counsel was ineffective for failing to claim, at sentencing and on direct appeal, her sentence violated the Sixth Amendment.

### 9. *Failure to Raise Strongest Issues*

Nieto argues counsel failed to investigate and present the strongest available issues on direct appeal or preserve them for collateral review. Nieto contends "[b]ut for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different." (Criminal Court File No. 67, p. 11).

Nieto has failed to delineate the issues she claims counsel failed to preserve for collateral review. Moreover, she is not entitled to any § 2255 relief on this claim as she does not identify nor

did the Court's research reveal a case requiring counsel to preserve issues for collateral attack. Generally, ineffective assistance of counsel claims are raised on collateral review and counsel cannot be deemed deficient for failing to preserve such an issue for his client. Accordingly, Nieto is not entitled to any § 2255 on this frivolous claim.

As to Nieto's claim that counsel failed to present the strongest available issues on direct review, the Court initially observes Nieto does not identify a meritorious issue that counsel failed to present on direct appeal, rather she complains counsel failed to effectively raise the confrontation objection. Counsel raised claims pertaining to the sufficiency of the evidence, denial of a sidebar conference regarding a hearsay objection, and an error on the part of the Court for failing to hold such conference. *United States v. Nieto*, 226 Fed. Appx. 483 (6th Cir. 2007), *available at* 2007 WL 930405 . The Court will begin its analysis with a discuss of the applicable law.

The United States Supreme Court has instructed that defense counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant on direct appeal. *Jones v. Barnes*, 463 U.S. 745 (1983). "[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal, . . ." *id.* at 751, but no decision of the Supreme Court suggests "that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Id.* (Internal punctuation and citations omitted). Therefore, counsel does not have a constitutional duty to advance every claim on appeal which the trial record supports in order to fulfill his constitutional duty to his client. *See Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986).

Here, Nieto specifically complains counsel failed to adequately present her Sixth Amendment constitutional right to confront witnesses claim, thus preventing the Sixth Circuit from reaching the merits of the claim (Criminal Court File No.67, p. 22).

Presumably, Nieto is challenging counsel's argument that a new trial is required because the trial court improperly admitted hearsay testimony when Detective Beverly testified about what a confidential informant had told him and counsel raised a confrontation clause argument. The appellate court address the claim as follows:

> Defendant argues that a new trial is required because the district court improperly admitted hearsay testimony. Defendant has waived this argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir.1999). Defendant cites only a single case, *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004),[3] and her application of law to facts consists of a single sentence: "In the instant case, the agent for the Government *490 was testifying to was [sic] a Confidential Informant had told him." Defendant's Br. at 12.
>
> This cursory treatment of the hearsay issue is insufficient to preserve the argument on appeal.

*United States v. Nieto*, 2007 WL 930405, *5.

For the sake of this discussion, counsel's performance will be presumed deficient in this instant. Nieto, however, is unable to demonstrate any resulting prejudice as a result of counsel's failure to sufficiently present the claim on direct review because the detective's testimony was limited to his understanding of the conversation to which he testified was the word kilo. In addition, the detective's testimony was cumulative to Nieto's codefendant's testimony, as the

---

[3]     Defendant misquotes *Crawford*, attributing to the case language that appears nowhere within it. One possibility is that counsel is quoting the Westlaw summary of *Crawford*, which is identical to the quotation in counsel's brief. Of course, only the holding of a Supreme Court case is binding precedent upon this Court. Westlaw summaries do not carry the force of law.

30

codefendant had already testified he and the confidential informant had discussed the codefendant and Nieto selling him a kilo of cocaine. Consequently, there was no confrontation violation as the testimony was properly limited and admitted.

Accordingly, because Nieto cannot demonstrate she was prejudiced by counsel's omission on direct review, § 2255 relief is **DENIED** on this claim.

### 10. Counsel Had a Conflict of Interest

Nieto claims counsel labored under an actual conflict of interest during the time he represented her. Nieto contends "[c]ounsel owed a 'duty' other than to Ms. Nieto. This duty was in conflict with the duty owed Ms. Nieto. Counsel chose between the duties. This choice adversely affected the performance of counsel during" the time in which he represented her. (Criminal Court File No. 67, p. 12).

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Under the *Cuyler* test, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id*. at 349-350. In *Mickens v. Taylor*, 535 U.S. 162 (2002), the Supreme Court found that the presumed prejudice standard of *Cuyler v. Sullivan* was clearly established only in the situation of a conflict of interest due to multiple concurrent representation. *Id*. at 175; *see also Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir., 2007) (The Sixth Circuit "has consistently held that, for § 2254 cases, the Sullivan standard does not apply to

claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland,* standard applies.").[4]

A review of Nieto's disorganized brief in support of her motion does not reveal a single fact to support this claim. A review of the record does not indicate counsel had any conflict of interest. Thus, once again Nieto has failed to provide any factual support to her claim, and such a pleading is in violation of the fact pleading requirements for § 2255 motions. Rule 2 of the Rules Governing Section 2255 Proceeding for the United States District Courts. Accordingly, relief on her claim that counsel suffered from a conflict of interest is **DENIED** for failure to provide factual support, and alternatively, even assuming the allegation is sufficient, for failure to demonstrate ineffective assistance of counsel as there is no evidence before the Court indicating counsel suffered from a conflict of interest which adversely affected his performance.

### 11. *Cumulative Error*

Nieto asserts, as her final ineffective assistance of counsel claim, trial counsel's cumulative errors during the pretrial, plea, trial, sentencing, and direct appeal constitute ineffective assistance of counsel. None of Nieto's other assertions constitute ineffective assistance under *Strickland*. Accordingly, because meritless claims or claims that did not result in prejudice cannot be cumulated, Nieto has failed to demonstrate she suffered from cumulative errors of a constitutional dimension;

---

[4]     Generally, §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally is applicable to the other. *Davis v. United States*, 417 U.S. 333, 345-44 (1974); *Steverson v. Summers*, 258 F.3d 520, 523 n. 4 (6th Cir.2001) ("Title 28 U.S.C. § 2255 is essentially equivalent to § 2254, the former being a postconviction remedy for federal prisoners and the latter available to 'a person in custody pursuant to the judgment of a State court.' ").

thus this claim is **DENIED**. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005) ("But we have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); *Warlick v. Romanowski,* 367 F.App'x 634, 641 (6th Cir. 2010); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (Agreeing that "meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised").

  B.  <u>Challenges to Sentence</u>

  Nieto's last three claims consists of allegations that she was sentenced in violation of her constitutional rights. Nieto's first claim is unclear but the Court understands her to argue the Court erroneously increased her base level offense by two levels for obstruction of justice when it found she committed perjury during trial. In her second claim, she contends the Court failed to understand the available range of sentencing discretion permitted by the Supreme Court's decision in *United States v. Booker*, 543 U. S. 220 (2005), as it was decided only a few months before her sentencing. Nieto's final claim consists of a catch-all allegation that her conviction and sentence violate the First, Fourth, Fifth, Sixth, and Eighth Amendments.

  A defendant who fails to challenge a sentence on direct appeal is barred from raising that challenge in a § 2255 proceeding absent a showing of good cause and prejudice. *United States v. Frady*, 456 U.S. 152-167-78 (1982). Nieto has made no allegation or showing of cause and prejudice, and therefore, has procedurally defaulted these claims. Nevertheless, even absent the procedural bar, as explained below, Nieto's challenges to her sentence are meritless.

#### 1. *Denial of Fifth and Sixth Amendment Rights During Sentencing*

Nieto alleges her statutory maximum sentence was increased based upon facts not charged in the indictment or submitted to the jury and not proved beyond a reasonable doubt or admitted by her. In addition, she claims the Court used the "mandatory" guidelines and failed to award proper weight to the factors set forth in 18 U.S.C. § 3553(a).

Initially the Court observes the record clearly contradicts Nieto's claims that the Court considered the guidelines mandatory and failed to properly weigh the factors set forth in 18 U.S.C. § 3553(a). The transcript of the sentencing hearing clearly reflects the Court treated the guidelines as "merely advisory" and properly considered the sentencing goals in 18 U.S.C. § 3553(a) (Criminal Court File No. 56, pp. 6, 10). Therefore, the portion of her claim alleging the Court consider the guidelines mandatory and failed to proper weigh the sentencing facts is **DENIED** as it lacks merit.

Although Nieto fails to identify the facts she claims were improperly used to enhance her sentence, because the indictment charged the drug amount triggering the statutory maximum sentence set by 21 U.S.C. § 841(b)(1)(B), and the jury found that amount beyond a reasonable doubt, the Court presumes Nieto is challenging the adjustment for obstruction of justice pursuant to USSG § 3C1.1. Nieto falsely testified at her trial that she did not participate in the distribution of cocaine or any of the offenses for which she was convicted. Consequently, as previously discussed, Nieto's false testimony at trial that she did not participate in the distribution of cocaine and crimes charged in the indictment constitutes obstruction of justice under § 3C1.1.

In addition, contrary to Nieto's contention, her sentence did not result in a sentence greater than the forty (40) year maximum permitted based on the jury's finding that Nieto was guilty of conspiring to distribute in excess of five hundred grams of a mixture or substance containing a

detectable amount of cocaine and the Court's judicial fact-finding as to the obstruction of justice enhancement does not implicate the Sixth Amendment.

> [T]he Supreme Court stated in *Booker* that the Sixth Amendment would not be implicated where the Guidelines were merely advisory. 543 U.S. at 233, 125 S.Ct. 738. As the Court stated, "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Id.* . . . . Based upon *Booker*, any judicial fact-finding within that legislatively-mandated range does not implicate the Sixth Amendment. *See* 543 U.S. at 233, 125 S.Ct. 738.

*United States v. Bustos,* 186 Fed.Appx. 551, 553 (6th Cir.), *available at* 2006 WL 1526089, *cert. denied*, 549 U.S. 968 (2006). Moreover, it is clear the jury in its guilty verdict accepted the testimony of the government's witnesses and rejected Nieto's testimony. Thus, arguably, the enhancement is also based on the jury's verdict.

Nevertheless, Nieto's sentence is below the statutory maximum of forty (40) years set by 21 U.S.C. § 841(b)(1)(B) which was triggered when the jury convicted her on the drug counts of the indictment. Accordingly, relief is **DENIED** on this claim.

### 2. *Denied Due Process*

Similar to part of the claim above, Nieto claims the Court lacked knowledge of the available sentencing discretion under *Apprendi v. New Jersey,* 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004), and *Booker.* As previously explained, although the Court consulted the guidelines, it deemed the guideline range and guidelines themselves as "merely advisory[,]" pursuant to the *Booker* decision (Criminal Court File No. 56, p. 6). Accordingly, § 2255 relief is **DENIED** as the record confirms the Court sentenced Nieto in accordance with current Supreme Court precedent.

35

### 3.    *Unconstitutional Sentence*

Nieto's final claim is a catch-all allegation that her conviction and sentence violated the First, Fourth, Fifth, Sixth, and Eighth Amendments (Criminal Court File No. 67, p. 15).  Nieto has failed to provide any developed argument to support this broad and general claim, thus resulting in yet another, factually unsupported claim in violation of Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Once again, this claim consists of mere legal conclusions unsupported by factual allegations and is legally insufficient to permit review.

Accordingly, this factually unsupported claim is insufficient to warrant an evidentiary hearing or § 2255 relief.  *See Oliver v. United States*, 961 F.2d 1339, 1343, n. 5 (7th Cir. 1992) ("No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." (Citation omitted)).

## V.    Conclusion

Nieto has failed to present any facts which establish her sentence is subject to collateral attack under 28 U.S.C. § 2255.  Accordingly, Nieto is not entitled to any relief under § 2255 and a judgment will enter denying her motion.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**